DOWNEY BRAND LLP
JAMIE P. DREHER (BAR NO. 209380)
jdreher@downeybrand.com
SEAN J. FILIPPINI (Bar No. 232380)
sfilippini@downeybrand.com
621 Capitol Mall, 18th Floor
Sacramento, California 95814
Telephone:    916.444.1000
Facsimile:    916.444.2100

Attorneys for ANVIL POWER, INC., ANVIL EQUIPMENT COMPANY LP,, ANVIL BUILDERS, ANVIL HOLDINGS, INC., ANVIL GROUP, LLC

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>Kingsborough Atlas Tree Surgery, Inc.,<br><br>    Debtor.<br><br>Kingsborough Atlas Tree Surgery, Inc.,<br><br>    Plaintiff,<br><br>    v.<br><br>Anvil Power, Inc., a California corporation, Anvil Equipment Company LP, a California limited partnership, Anvil Builders, a California corporation, Anvil Holdings, Inc., a California corporation, Anvil Group, LLC, a California limited liability company,<br><br>    Defendants. | Case No. 25-10088 WJL<br><br>Chapter 11<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RETAINING ORDER, PRELIMINARY INJUNCTION, AND IMMEDIATE TURNOVER OF PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. § 542**<br><br>Judge:  Hon. William J. Lafferty<br>Date:   March 26, 2025<br>Time:  10:30 a.m. |

\\\

\\\

\\\

## I. INTRODUCTION

Plaintiff Kingsborough Atlas Tree Surgery, Inc. ("KBA") seeks a temporary restraining order and order preliminarily enjoining Defendants Anvil Power, Inc., Anvil Equipment Company LP, Anvil Builders, Anvil Holdings, Inc., Anvil Group, LLC (collectively, "Anvil" or "Defendants") from using specified equipment and ordering it returned—on an "emergency" basis. There is no "fire" warranting such drastic relief. The dispute arises from a longstanding relationship between the parties involving an Asset Purchase Agreement ("ASA") signed in June 2023. Equipment has accordingly been in Anvil's possession for nearly two years. This status quo should remain—at least until Defendants have an appropriate opportunity (i.e., more than one and a half business days) to consider and oppose the Motion. That said, while KBA rails that equipment may be lost, abandoned, or destroyed, KBA has not proffered any admissible evidence of irreparable, imminent harm to equipment—let alone explained why monetary damages would not be perfectly suited to address any such purportedly anticipated harm. Anvil is, in fact, entitled to the equipment under the APA, as explained in the accompanying declaration.

The Motion should accordingly be denied without prejudice, and a hearing then re-set at least three weeks from now on the Motion, so the issues can be fully briefed and considered.

## II. ARGUMENT

**A.    Defendants Require Additional Time to Properly Consider and Oppose the Motion.**

*Ex parte* applications are solely for extraordinary relief; they "are rarely justified." (*Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F.Supp. 488, 490 (C.D. Cal. 1995).) In *Mission Power*, the court explained the inherent unfairness of *ex parte* motions and how "they pose a threat to the administration of justice": "Though the adversary does have a chance to be heard, the parties' opportunities to prepare are grossly unbalanced. Often, the moving party's papers reflect days, even weeks, of investigation and preparation; the opposition party has perhaps a day or two. This is primarily due to gamesmanship." (*Id.*) As a result, "[t]he opposing party can rarely make its best presentation on such short notice." (*Id.*, at 491.)

While KBA has had weeks, even months, to prepare its Motion on an *ex parte* basis, Defendants have not had that same luxury. The Motion was filed after business hours on

OPPOSITION TO PLAINTIFF'S MOTION FOR TRO, PRELIMINARY INJUNCTION, AND TURNOVER

1 Thursday, March 20, setting a hearing for March 26, with an opposition due by 2:00 pm on March
2 25. Defendants have therefore had two and a half business days to prepare the Opposition.

3       Defendants require additional time to adequately oppose the Motion. Discrepancies exist on the equipment list submitted as "Exhibit A" to the Declaration of Richard Kingsborough, for example. That list is incorrect in some respects; some of the equipment is not in Defendants' possession. Additional time is needed to take an inventory of the items listed on "Exhibit A" and determine: (i) if Defendants could even comply with an Order for the return of equipment (i.e., that they do not possess); or (ii) the extent to which they oppose the return of certain equipment.

      Accordingly, a briefing schedule should be set to afford Defendants a proper opportunity to respond to the Motion. As argued further below, no "emergency" exists warranting *ex parte* relief. (*In re Intermagnetics America, Inc.*, 101 B.R. 191 (C.D. Cal. 1989) ["Timetables for the submission of responding papers and for the setting of hearings are intended to provide a framework for the fair, orderly, and efficient resolution of disputes. Ex parte applications throw the system out of whack."].)

**B.**    <u>No "Emergency" Warrants a Temporary Restraining Order on an *Ex Parte* Basis.</u>

      An "emergency" must exist to warrant a temporary restraining order. As the court in *Mission Power Engineering Co., supra,* 883 F.Supp. at 492 explained: "Lawyers must understand that filing an ex parte motion, whether of the pure or hybrid type, is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!' There had better be a fire."

      There is no explanation in the Motion for the urgent and drastic relief demanded, particularly on such short notice. As stated in the Motion, the Asset Purchase Agreement was signed nearly two years ago, on June 5, 2023. (Declaration of Richard Kingsborough ["Kingsborough Decl."], at ¶ 4.) KBA even concedes that its demands for the return of equipment occurred months ago, in January. (*Id.*, ¶ 13.) While the Motion's accompanying declaration is woefully vague about any purported damage to equipment or lack of regular maintenance, what we do know is that such false accusations are nothing new. They're in Anvil's Complaint filed in state court, also in January (Sonoma County Superior Court, Case No. 25CV00751). Where is the "fire"? KBA has filed the Motion on an *ex parte* basis as a tactical maneuver, to deprive

OPPOSITION TO PLAINTIFF'S MOTION FOR TRO, PRELIMINARY INJUNCTION, AND TURNOVER

Defendants of the opportunity to properly respond.

C. **KBA Has Not Shown It Will Suffer Irreparable Harm Absent Relief Being Granted.**

To obtain a temporary restraining order, KBA must show a significant threat of irreparable harm that would result absent the court granting the requested relief. (*Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008).) Further, such harm "must be imminent; establishing a threat of irreparable harm in the indefinite future is not enough." (*Amylin Pharm., Inc. v. Eli Lilly & Co.*, 456 F. App'x 676, 679 (9th Cir. 2011).)

1. **KBA Has Not Submitted Any Evidence of Imminent, Irreparable Harm.**

The Motion is remarkably vague about any irreparable harm that would warrant a temporary restraining order. "Evidence" of such purported harm is solely contained in Paragraphs 15, and 17-20 of the Declaration of Richard Kingsborough. Absolutely no documentary evidence is submitted to support any of these paragraphs.

This aside, Mr. Kingsborough's claims are unacceptably without foundation and personal knowledge, amounting to hearsay. Mr. Kingsborough avers that Anvil "is now attempting to secret and remove KBA Equipment to undisclosed locations" and not properly maintaining it. (Kingsborough Decl., ¶¶ 15 & 16.) But such statements are made "[o]n information and belief" and based on "my understanding"—classic hallmarks for no foundation or personal knowledge existing to support them. Indeed, Mr. Kingsborough provides no foundation whatsoever for how he knows equipment is allegedly being removed to other locations and not purportedly being maintained properly. He does not ever state what he presumably witnessed, when, and where. For example, in averring that "Anvil totaled a KBA vehicle in its possession…", is Mr. Kingsborough relying on his own percipient knowledge (no foundation created), a document (best evidence rule), or some phantom third party (hearsay)? Beyond this, Mr. Kingsborough (and the Motion) provide no detail whatsoever for how equipment was allegedly not maintained properly. This lack of detail is emblematic of the non-existent evidentiary foundation on which KBA's entire Motion relies. In fact, Anvil has invested a substantial amount into maintaining the equipment, given its poor condition at the time KBA provided it. (Declaration of Richard Leider ["Leider" Decl.], ¶ 12.) Mr. Kingsborough's other aspersion about the equipment are debunked in Mr. Leider's

OPPOSITION TO PLAINTIFF'S MOTION FOR TRO, PRELIMINARY INJUNCTION, AND TURNOVER

accompanying declaration.

### 2. KBA Has an Adequate Legal Remedy.

"Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy." (*Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).) "[E]conomic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." (*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).) In his declaration, Mr. Kingsborough argues that he may suffer irreparable harm if the equipment is "lost, abandoned, destroyed, and/or unavailable to KBA." (Kingsborough Decl., ¶ 19.) But all equipment (just like any other ordinary asset) can be valued monetarily, and KBA provides no basis for why any such purported harm could not be compensated for financially. KBA declines to so argue because the equipment is just that: equipment. Such equipment has absolutely no sentimental value to anyone, and monetary compensation is a perfectly appropriate remedy to address any lost or damaged equipment.

### D. KBA is not Entitled to Possession of the Equipment—Anvil is.

As set forth in the accompanying declaration of Richard Leider, KBA executed a "Line of Credit and Security Agreement" wherein it pledged its equipment to Anvil as security for its financial obligations to Anvil. In that Security Agreement it agreed that in the event of default, Anvil had the right to possession of its equipment. On February 5, 2025, Anvil declared KBA in default owing in excess of $4 Million to Anvil. Accordingly, pursuant to the Security Agreement, KBA has no right to possession. The right to possession belongs to Anvil.

## III. CONCLUSION

Because "emergency" relief is not warranted, Defendants propose the following path forward until a properly noticed and briefed motion can be heard on the merits: Defendants will commit to maintain the status quo. A hearing should be scheduled out at least three weeks on the Motion.

Should the Court issue a temporary restraining order, then KBA should be required to retrieve the equipment because there are significant costs associated with such retrieval. Defendants have previously attempted to deliver small amounts of equipment to KBA, and KBA

OPPOSITION TO PLAINTIFF'S MOTION FOR TRO, PRELIMINARY INJUNCTION, AND TURNOVER

has lacked an appropriate facility or yard for even these small amounts of equipment (let alone the entire list that KBA demands be returned in the Motion). (*See* Leider Decl., ¶ 16.)

DATED: March 25, 2025    DOWNEY BRAND LLP

By: _____
JAMIE P. DREHER
SEAN J. FILIPPINI
Attorneys for ANVIL POWER, INC., ANVIL EQUIPMENT COMPANY LP,, ANVIL BUILDERS, ANVIL HOLDINGS, INC., ANVIL GROUP, LLC