DOWNEY BRAND LLP
JAMIE P. DREHER (Bar No. 209380)
jdreher@downeybrand.com
SEAN J. FILIPPINI (Bar No. 232380)
sfilippini@downeybrand.com
CHRISTOPHER M. KOLKEY (Bar No. 300206)
ckolkey@downeybrand.com
621 Capitol Mall, 18th Floor
Sacramento, California 95814
Telephone:   916.444.1000
Facsimile:   916.444.2100

Attorneys for ANVIL POWER, INC., ANVIL EQUIPMENT COMPANY LP, ANVIL BUILDERS, ANVIL HOLDINGS, INC., ANVIL GROUP, LLC, ALAN GUY, and RICHARD J. LEIDER

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br>KINGSBOROUGH ATLAS TREE SURGERY, INC.,<br>Debtor. | Case No. 25-10088 WJL<br><br>Chapter 11<br><br>AP No. 25-01005 |
| KINGSBOROUGH ATLAS TREE SURGERY, INC.,<br>Plaintiff,<br>v.<br>ANVIL POWER, INC., a California corporation, ANVIL EQUIPMENT COMPANY LP, a California limited partnership, ANVIL BUILDERS, a California corporation, ANVIL HOLDINGS, INC., a California corporation, ANVIL GROUP, LLC, a California limited liability company; ALAN GUY, an individual; RICHARD J. LEIDER, an individual, and DOES 1-100,<br>Defendants. | **DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND IMMEDIATE TURNOVER OF PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. § 542** |

## I. INTRODUCTION

In ordering supplemental briefing, the Court tasked the parties with explaining how the equipment at issue ("KBA Equipment") should be transferred after Anvil voluntarily made it available to Plaintiff Kingsborough Atlas Tree Surgery, Inc. ("KBA") over six weeks ago. After KBA ignored weeks of requests from Anvil to come get the KBA Equipment, KBA requested that the Court order Anvil to physically transport all of the KBA Equipment to a location designated by KBA.

KBA's briefing on its request fails to address whether it is entitled to a turnover order in the first place, including neglecting to offer sufficient evidence or argument as to how the elements for a turnover order are met. KBA's briefing is also devoid of any argument or authority as to who should pay for the transportation of the KBA Equipment to a location designated by KBA. Instead, KBA merely identifies the word "deliver" in 11 U.S.C § 542[1] and calls it a day. This fails to plug the holes in KBA's demand for a turnover order.

First, a fundamental express requirement of Section 542 is that the property to be returned is not "of inconsequential value or benefit to the estate." Yet KBA—notwithstanding it carries a preponderance of evidence burden of proof—has never submitted *any* evidence of the equipment's value or benefit, and whether it is even worth the cost of transporting.

Second, even if KBA met this burden, Anvil would not be required to physically transport the KBA Equipment to a location designated by KBA. Under California law (specifically, Commercial Code section 2308), the place for "delivery"—by default—is Anvil's place of business or otherwise where the KBA Equipment is located at the time of contracting. Under Section 542, the cost for such removal falls on the trustee, KBA, as also explained further below.

The reality is that for nearly two months, Anvil has made the KBA Equipment available to be picked up at a consolidated and centralized location. At the time Anvil took possession of the KBA Equipment, it was located across multiple project locations throughout Northern California

---

[1] KBA's brief quoted the relevant language from Section 542 but incorrectly cited 11 U.S.C § 1107(a).

in piecemeal fashion. It was not in a centralized or consolidated location. Anvil voluntarily transported the piecemeal KBA Equipment to the present consolidated and centralized locations in Fairfield and Santa Rosa, both locations within a 60-mile radius of KBA's facility in Santa Rosa. Notwithstanding that KBA has failed to meet its burden to justify return of such equipment under Section 542, Anvil remains ready and willing to tender possession of the KBA Equipment at Anvil's premises (i.e., "deliver" it).

## II. STATEMENT OF FACTS

### A. Location of KBA Equipment.

Anvil has already delivered a substantial amount of KBA owned equipment to KBA's 6263 Sebastopol Avenue (Highway 12) yard. At the time Anvil took possession of the KBA Equipment, it was located at numerous jobsites throughout northern California. (Declaration of Sean J. Filippini ["Filippini Decl."], ¶ 3, Ex. B.) Now, however, due to Anvil's efforts, a significant amount of that equipment has already been returned to KBA. The remaining KBA Equipment is located at one of two centralized locations: (1) Anvil's Fairfield Yard (2216 Cement Hill Road, Suite C, Fairfield, CA 94533); and (2) Anvil's Windsor Yard (5910 Pruitt Avenue, Windsor, CA 95492). (*Id.*) Each of these sites is within a 60 mile radius of KBA's facility in Santa Rosa. (*Id.*) Such equipment consists of vehicles and various attachments at the Fairfield Yard and two vehicles and various attachments in the Windsor Yard. While relatively close in proximity, it would still take about twenty trips from the Fairfield Yard, for example, to return the equipment. A list of the current location of the KBA Equipment is attached as Exhibit C to the Declaration of Sean J. Filippini, which shows that a substantial majority of the KBA Equipment is located in Fairfield. (*Id.*, Ex. C.) Anvil has made this equipment available for KBA's retrieval for well over a month, since early April 2025. (*Id.*, ¶¶ 2 & 3.)

### B. Anvil's Voluntary Return of the KBA Equipment and KBA's Refusal to Pick It Up.

On or about March 31, 2025, Anvil represented to KBA that it was going to directly return some of the equipment (that was located closely in Santa Rosa), and it would make the remaining KBA Equipment available to be picked up on April 7. (Filippini Decl., ¶ 2, Ex. A.) KBA did not pick up the equipment on April 7 (or any other date) and instead sent an email on April 14, stating

Case: 25-01005  Doc# 20-1  Filed: 05/27/25  Entered: 05/27/25 18:24:10  Page 3 of 6

3

DEFENDANTS' SUPPLEMENTAL BRIEF

KBA "does not have the employees available to retrieve equipment/vehicles that your clients have transported to distant locations." (*Id.*) As explained above, if anything, the KBA Equipment was centralized and brought *closer* to KBA.

### III. LEGAL ARGUMENT

KBA's demand for "delivery" of the KBA Equipment is improper in two respects: (1) KBA has not met its burden of showing by a preponderance of the evidence the KBA Equipment is not "of inconsequential value or benefit to the estate" as required under 11 U.S.C. § 542; and (2) even if KBA met this burden (it did not), Section 542 only provides a duty to tender possession of the KBA Equipment at Anvil's premises, and the cost for such removal falls on KBA.

#### A. KBA Has Not Met Its Burden Required for a Turnover Order.

Section 542 provides that an entity "in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, ***unless such property is of inconsequential value or benefit to the estate***." 11 U.S.C. § 542 (emphasis added). In demanding delivery of the KBA Equipment, KBA disregarded an express requirement of Section 542 before there can be any order for turnover. Nowhere in KBA's initial motion or its supplemental brief is there *any* attempt to prove the value of the KBA Equipment, let alone demonstrate that it was not "of inconsequential value or benefit to the estate", as mandated under Section 542.

This was KBA's burden to prove. "The chapter 7 trustee, as the party seeking turnover, bears the burden of proving element by a preponderance of the evidence. (*In re Bailey*, 380 B.R. 486, 490 (B.A.P. 6th Cir. 2008).) There is, however, a split of authority on whether the preponderance of evidence standard applies or the demanding clear and convincing standard applies to a turnover action. (*In re Meyers*, 616 F.3d 626, 630 (7th Cir. 2010).) In this case, it is of no consequence as to whether the lower or higher standard applies because KBA's showing on its papers does not come close to satisfying the lower, preponderance standard.

KBA merely submits a list of equipment in Anvil's possession that it wants transported. (*See* Dkt. 16 [Amended Declaration of Philip J. Terry].) Putting aside that Mr. Terry, counsel for

KBA, has no personal knowledge or foundation to testify about the accuracy of that list, the list nowhere identifies the worth—let alone the *condition*—of that equipment. This is problematic because, according to KBA, much of the KBA Equipment is in a deteriorated condition, suffering mechanical failure, and has scrap value. KBA strenuously represented as much to the Court, when Richard Kingsborough, KBA's owner, testified that "multiple items of Equipment are . . . in disrepair or in poor condition…." (Dkt. 2-3 [Declaration of Richard Kingsborough], at ¶ 17.) Because KBA failed to meet its burden of showing by a preponderance of evidence the KBA Property is not "of inconsequential value or benefit to the estate", there can be no turnover order under Section 542 and, necessarily, no order that Anvil be required to transport it.

### B. Section 542 Only Provides a Duty to Tender Possession of the KBA Equipment at Anvil's Premises, and the Removal Cost Falls on KBA.

Even had KBA met its burden of showing the KBA Property is not "of inconsequential value or benefit to the estate", Anvil would not be required to pay the costs associated with delivering the property to Anvil.

Section 542 only provides for the "delivery" of property to the trustee, making no mention of whether this also requires that: (1) an entity physically transport the property to the trustee's designated location; and (2) even if physical transport to the trustee's designated location is required, that the entity pay the cost for that delivery. Notwithstanding this precise issue was raised at the last hearing (and culminated in the request for this supplemental briefing), KBA cites no authority on this issue and provides no argument—other than to simply assert that the statute uses the word "deliver."

*In re Janmar*, 4 B.R. 4, 10-11 (Bankr. N.D. Ga. 1979) addressed this question, holding that section 542 "means only a duty to tender possession of the item at the premises of the [entity]" and "the cost of removal must fall upon the trustee, since the duty of [the entity] is merely to tender possession…." The Georgia district court reached this decision by applying Georgia law on leases of personal property with respect to the concept of delivery. (*Id*., at 10 ["Since there is no compelling reason why Federal law should override the law of the state, the Georgia law on leases of personal property will be examined with respect to the concept of delivery."].) The same

result is obtained under California law. The default rule in California is "[t]he place for delivery of goods is the seller's place of business" and if, at the time of contracting are in some other place, "that place is the place for their delivery." (Cal. Comm. Code, § 2308, subds. (a) & (b).)[2]

Here, under California law, "delivery" only means a duty to tender possession of the KBA Equipment at Anvil's Fairfield Yard and Anvil's Windsor Yard—both of which are located within a 60-mile radius of KBA's location. There is no authority suggesting, let alone establishing that, "delivery" really means "transport to any location designated by the trustee." Notwithstanding Anvil's offer to "deliver" the KBA Equipment, KBA has refused to accept such delivery.

## IV. CONCLUSION

The Court should deny KBA's request in its entirety because: (1) KBA's has failed to meet its burden to be entitled to a turnover order; and (2) California law makes clear that deliver means to tender at Anvil's place of business.

DATED: May 27, 2025						DOWNEY BRAND LLP

By:    /s/ Sean J. Filippini
SEAN J. FILIPPINI
Attorneys for ANVIL POWER, INC., ANVIL EQUIPMENT COMPANY LP, ANVIL BUILDERS, ANVIL HOLDINGS, INC., ANVIL GROUP, LLC, ALAN GUY, and RICHARD J. LEIDER

---

[2] A California district court unpublished case, *In re Sipe*, No. 16-24559-B-13, 2018 WL 5748630 (Bankr. E.D. Cal. Oct. 30, 2018) casts doubt on the viability of *In re Janmar* in the Ninth Circuit. This unpublished decision did not analyze California state law, however, and it is also distinguishable because the trustee had submitted sufficient evidence to show the personal property in question was "not of inconsequential value or benefit."